# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HUMBERTO TREVINO,

    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

No. 15 C 7818

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Humberto Trevino filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq., 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover DIB or SSI,[1] a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq.

Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

The standards for determining DIB and SSI are virtually identical. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on November 22, 2011, alleging that he became disabled on February 1, 2011, because of broken neck and back due to car accident, migraines, and high blood pressure. (R. at 22, 147, 269). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 22, 139–47, 150–52, 162). On January 21, 2014, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 22, 51–138 ). The ALJ also heard testimony from Leigh Ann Bluhm, a vocational expert (VE), and Chukwuemeka Ezike, a medical expert (ME). (*Id.* at 22, 102–38, 187–89).

The ALJ denied Plaintiff's request for benefits on February 5, 2014. (R. at 22–34). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since February 1, 2011, the alleged onset date. (*Id.* at 24). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, cervical spine facet arthrosis/spondylosis, history of fracture of the vertebra of the cervical spine, and arthritis of the bilateral knees are severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that met or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 25–26).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that he has the capacity to perform light work, except that Plaintiff

> is never to climb ladders, ropes or scaffolds, but he is able to occasionally climb ramps or stairs, balance, kneel, stoop, crawl, crouch or bend; he is to avoid concentrated exposure to temperature extremes.

(R. at 26). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 32). At step five, based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as assembler, inspector, and hand packager. (*Id.* at 32–33). Accordingly, the ALJ concluded that Plaintiff is not suffering from a disability, as defined by the Act. (*Id.* at 33–34).

The Appeals Council denied Plaintiff's request for review on July 8, 2015. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regula-

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

tions. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*,

763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff was involved in an automobile accident on February 1, 2011. (R. at 378, 493, 542). He went to the ER an hour later, complaining of neck, chest, and abdominal pain, along with muscle stiffness. (*Id.* at 378, 542). A CT scan found no acute traumatic injury to his chest, abdomen, or pelvis but noted an old fracture of the right transverse process of the L1 vertebra. (*Id.* at 386). March 16 x-rays found degenerative disc disease at L5/S1, facet arthrosis in the mid to lower lumbar spine and the cervical spine from C7–T2, and generalized osteoarthritis. (*Id.* at 533–34). A bone scan performed on March 28 found a fracture in the region of the fifth cervical vertebra, which A.G. Phillips, M.D., concluded was "consistent with the patient's history of having sustained injuries in a motor vehicle accident on February 1, 2011." (*Id.* at 552). From March to June 2011, Plaintiff sought chiropractic care. (*Id.* at 518–31). He tried to return to work but struggled with ongoing pain, muscle spasms, limited motion, and headaches. (*Id.* at 269, 285, 518–31).

On October 11, Plaintiff went to the ER for treatment of headaches, neck pain, which he described as 7/10, and muscle stiffness. (R. at 484, 487). He ambulated without difficulty with a normal gait. (*Id.* at 485). He was diagnosed with a cervical strain and prescribed Norco. (*Id.* at 486). On October 26, Plaintiff began treating with Timothy Durnin, D.C. (*Id.* at 399–402). He complained of severe neck pain,

which he characterized as 10/10, stiffness, tingling in his feet, right hand pain with numbness, and headaches. (*Id.*).

On December 13, 2011, an Agency representative, who was interviewing Plaintiff about his disability application, observed that he had trouble moving his neck either to the right or left. (R. at 266). On December 27, Plaintiff completed a Function Report. (*Id.* at 292–99). He asserted that he cannot sit for long periods of time without pain and stiffness, cannot turn his neck left to right or front to back, and has constant headaches and lightheadedness. (*Id.* at 292). He can stand for only 10 minutes before his legs go numb. (*Id.* at 297). He is able to walk only ½ block before needing a 10–15 minute rest. (*Id.*). His headaches cause blurry vision. (*Id.* at 299). He has trouble sleeping because of constant pain. (*Id.* at 293). He also has trouble using his hands because of constant numbness. (*Id.* at 299).

In January 2012, Plaintiff was hospitalized for severe abdominal pain, which radiated to the back, and was diagnosed with acute pancreatitis. (R. at 424–25, 447–48, 451–52). He reported no headaches or neck stiffness and only minor back pain. (*Id.* at 425, 428, 430, 435). His medications included Diclofenac and Lisinopril. (*Id.* at 426).

On March 10, 2012, William J. Lopez, M.D., performed an internal medicine consultative examination on behalf of the Agency. (R. at 489–98). He reviewed medical records and interviewed Plaintiff, who complained of neck and back pain. (*Id.* at 493). Plaintiff reported gradually increasing pain in his back and neck, which he characterized as 8–9/10. (*Id.* at 494). Associated symptoms include stiffness, head-

aches, and intermittent right hand numbing sensation. (*Id.*). His pain is aggravated with prolonged walking, movement of his neck, repeated bending, twisting, and lifting. (*Id.*). Pain medications, which include Flexeril and Diclofenac, and physical therapy provide minimal relief. (*Id.*). Plaintiff denied dizziness, lightheadedness, vision changes, diplopia, chest pain, shortness of breath, abdominal pain, and weakness or radicular symptoms. (*Id.*). He stated that he is able to walk, stand, sit, and climb stairs. (*Id.*). He is able to cook, drive, shop, and feed, bathe, and dress himself. (*Id.*). He is able to handle and manipulate objects. (*Id.*). On examination, Dr. Lopez found that Plaintiff could get on and off the examination table without difficulty, could walk greater than 50 feet without support and with a nonantalgic gait. (*Id.* at 490, 496). He could perform a toe/heel walk, squat, and arise with mild difficulty. (*Id.*). His grip strength was normal in both hands and he had a normal ability to grasp and manipulate objects. (*Id.* at 496). Plaintiff's range of motion of the shoulders, elbows, writs, hips, knees, and ankles was normal. (*Id.*). A straight leg test was negative bilaterally. (*Id.*). Plaintiff's range of motion of the cervical and lumbar spine was limited by pain.[3] (*Id.* at 491–92, 496). Tenderness to superficial palpitation was noted on the posterior cervical and lumbar areas bilaterally. (*Id.*). Dr. Lopez noted that Plaintiff displayed "excessive grimacing during the examination and poor voluntary effort with active ROM." (*Id.*). A Spurling test was nega-

---

[3] Specifically, Plaintiff's cervical flexion was 30° (normal 50°), extension was 30° (normal 60°), lateral bending was 20° (normal 45°), and rotation was 60° (normal 80°). (R. at 491). Plaintiff's lumbar flexion was 45° (normal 90°), extension was 15° (normal 25°), and lateral bending was 20° (normal 25°). (*Id.* at 492).

tive.[4] Dr. Lopez's diagnosed cervical strain without radiculopathy, lumbar strain without radiculopathy, uncontrolled hypertension, tobacco and alcohol abuse, history of acute pancreatitis, and a L1 vertebra right transverse process fracture, old and healed, per MRI findings. (*Id.* at 496–97).

On March 20, 2012, George Andrews, M.D., a nonexamining DDS physician, examined the medical record and concluded that Plaintiff's report of limitations was excessive, not consistent, and not credible when compared with "essentially normal exams." (R. at 501). Dr. Andrews also noted that Plaintiff's statements to Dr. Lopez that he can walk, stand, sit, drive, cook, shop, and bathe himself are inconsistent with what he reported on his Function Reports. (*Id.*). On July 25, 2012, Bharati Jhaveri, M.D., another nonexamining DDS physician, affirmed Dr. Andrews's conclusions. (*Id.* at 515).

On June 3, 2012, Plaintiff completed a second Function Report. (R. at 342–49). He asserted that he cannot turn or bend his head, has back pain and numbness in legs and hands, has a torn ACL in his left knee and torn meniscus in his right knee, and hypertension. (*Id.* at 342). He needs help to put on his clothes and to wash himself. (*Id.* at 343). He is able to walk only 20 feet before needing to take a 10 minute rest. (*Id.* at 347).

On July 14, 2012, Norbert De Biase, M.D., performed another Internal Medicine Consultative Examination on behalf of the Agency. (R. at 503–10). Plaintiff reported

---

[4] "The Spurling test is a medical maneuver used to assess nerve root pain (aka radicular pain)." <https://en.wikipedia.org/wiki/Spurling's_test> (last visited November 28, 2016).

that he is in constant pain, along with stiffness in his neck and back. (*Id.* at 503).
He has numbness in his right leg and right arm. (*Id.*). He can sit or stand only for
one hour at a time. (*Id.*). Plaintiff also reported knee pain, a history of migraines,
occasional headaches, and dizziness. (*Id.* at 504). While he is able to bathe himself,
his wife does all the cooking, cleaning, and laundry. (*Id.* at 505). On examination,
Plaintiff was able to get on and off the exam table without difficulty. (*Id.* at 506). He
was able to walk 50 feet without support; his gait limps minimally on the left side.
(*Id.*). Plaintiff stated that he was unable to perform a toe/heel walk. (*Id.*). His grip
strength, ability to grasp and manipulate, and make fists were all normal. (*Id.*). He
had full range of motion in his shoulders, elbows, wrists, hips, right knee, and an-
kles. (*Id.*). A straight leg test was negative bilaterally. (*Id.*). The range of motion of
the left knee and cervical/lumbar spine were abnormal.[5] (*Id.*).

October 29, 2012 lumber spine x-rays indicated degenerative changes in facet
joints and disc space, disc space narrowing, and either a rudimentary rib at L1 or a
nondisplaced fracture. (R. at 537). On October 30, Augusto Chavez, M.D., a spine
specialist, examined Plaintiff for complaints of neck pain and stiffness, numbness in
the right arm and right leg, and low back pain. (*Id.* at 542). Plaintiff reported that
his pain has not been alleviated with either Robaxin or tramadol. (*Id.* at 544). He
stopped using anti-inflammatory medicines after they caused severe gastroenteritis.
(*Id.*). Plaintiff reported marked limitations in his range of motion of his neck and

---

[5] Specifically, Plaintiff's cervical flexion was 0° (normal 50°), extension was 50° (normal
60°), lateral bending was 35° (normal 45°), and rotation was 60° (normal 80°). (R. at 508).
Plaintiff's lumbar flexion was 30° (normal 90°), extension was 5° (normal 25°), and lateral
bending was 10° (normal 25°). (*Id.* at 509).

lumbar spine. (*Id.* at 545). He is unable to lift his child, who weighs 30 pounds, or pick up anything from the floor, and even squatting is difficult. (*Id.*). On examination, Dr. Chavez found no tenderness, palpitation, or muscle spasms in the cervical area. (*Id.*). Range of motion was "very limited"—flexion is restricted, extension is limited to 30–35°, and rotation is limited to 10–15°. (*Id.*). Dr. Chavez noted weakness in flexion and extension of the right elbow and reduced strength in the grip of the right hand. (*Id.*). Plaintiff ambulated with short steps and a little hesitation. (*Id.*). Lumbar flexion was limited to 30° and lateral bending to 10–15° due to pain across the lumbosacral region. (*Id.*). Plaintiff had difficulty lying in a supine position because of pain and straight leg raising was limited to 70–75° due to lumbar pain. (*Id.*). Dr. Chavez also noted problems with both knees, including his ligaments. (*Id.*). Dr. Chavez's diagnosed severe chronic cervical and lumbar strains, questionable cervical radiculopathy with weakness in the right extremity and generalized stiffness in the cervical and lumbar regions, and prescribed muscle relaxants and Norco. (*Id.* at 546).

A December 2012 MRI found reversal of normal lordotic curvature of the cervical spine, which may be due to myospasm, early cervical spondylosis, and a disc bulge that effaces the thecal sac. (R. at 560). A January 2013 MRI demonstrated moderate bilateral foraminal stenosis, grade 1 retrolisthesis with narrowing and desiccation of the associated disc, and disc bulging with focal protrusion. (*Id.* at 561–62).

On January 10, 2013, Kishand Chand, M.D., examined Plaintiff for complaints of bilateral knee pain. (R. at 566). Dr. Chand noted swelling and reduced range of

motion. (*Id.*). Dr. Chand diagnosed osteoarthritis of both knees and prescribed knee support, physical therapy, and a nonsteroidal anti-inflammatory medication. (*Id.*). At a January 30 follow-up, Plaintiff's knee pain was worse on the left side, he had an antalgic posture with limping, decreased range of motion, and knee tenderness on examination. (*Id.* at 565). Dr. Chand injected Plaintiff's left knee and prescribed Vicodin and Diclofenac. (*Id.*).

Plaintiff testified that he has neck pain radiating to his fingertips, limited neck movement, numbness in his fingertips that causes him to drop items, lower back pain radiating down his right leg, and swelling in both knees. (R. at 75, 79–80, 88–92). He can stand for only 20 minutes at a time, cannot sit for long periods, and uses a cane to help ambulate. (*Id.* at 72–75, 84–85). He has difficulty bending, can only partially squat, cannot kneel, and has fallen down the stairs multiple times. (*Id.* at 85–87, 92–93). His pain medications make him groggy, and his symptoms continue to worsen. (*Id.* at 79, 85).

The ME, after reviewing the medical record, testified that in his opinion, Plaintiff has chronic lower back and neck pain due to lumbar degenerative disc disease, cervical spondylosis, and cervical face arthrosis; bilateral knee arthritis; and hypertension controlled by medication. (R. at 103–05). Dr. Ezike also concluded that there is no evidence of an inability to ambulate or the need for a cane in the medical record. (*Id.* at 106). He opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit six hours and stand and walk at least two hours due to chronic back pain and knee pain, push and pull consistent with his lifting abilities, occa-

sionally navigate ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, bend, stoop, knee, squat, crawl, or crouch, and work in an environment without concentrated exposure to extreme temperatures due to his arthritis. (*Id.* at 107–08). The ME acknowledged that osteoarthritis is a progressive disease that could worsen over time. (*Id.* at 118). He also acknowledged that Plaintiff might require a sit/stand option and breaks throughout the day, but that these restrictions were not documented in the medical record. (*Id.* at 125–26).

## V. DISCUSSION

Plaintiff contends that (1) the ALJ's RFC assessment was flawed because it did not account for limited neck mobility, and (2) the ALJ's credibility assessment was not supported by substantial evidence. (Dkt. 13 at 8–15).

### A. The RFC Did Not Account for Plaintiff's Limited Neck Movement

Plaintiff contends that the ALJ failed to properly assess his RFC. (Dkt. 13 at 8–9). He argues that despite the overwhelming evidence of "significantly reduced ranges of cervical spine motion," the ALJ "included no limitations in the [RFC] which accommodated [Plaintiff's] very limited ability to move his head." (*Id.* at 8, 9).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling (SSR) 96-8p, at *2.[6] ("RFC is an

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations,

administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; see 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

The ALJ determined that Plaintiff's severe impairments include degenerative disc disease of the lumbar spine, cervical spine facet arthrosis/spondylosis, history of fracture of the vertebra of the cervical spine, and arthritis of the bilateral knees. (R. at 24). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that Plaintiff can perform a

the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

limited range of light work. (*Id.* at 26). The ALJ accommodated Plaintiff's impairments by limiting him to never climbing ladders, ropes or scaffolds; only occasionally climbing ramps or stairs, balancing, kneeling, stooping, crawling, crouching or bending; and avoiding concentrated exposure to temperature extremes. (*Id.*). Based on the ALJ's RFC assessment and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as assembler, inspector, and hand packager. (*Id.* at 806–07).

The medical record demonstrates that Plaintiff has limited ability to move his head. Plaintiff fractured a vertebra in his cervical spine during the February 2011 automobile accident. (R. at 552). He also has cervical spondylosis and facet arthrosis. (*Id.* at 534, 560). When Plaintiff first applied for benefits, an Agency employee noted that he had trouble moving his neck either to the left or right. (*Id.* at 266). On two separate occasions, Agency examiners found Plaintiff had significantly limited cervical flexion, extension, rotation, and lateral bending. (*Id.* at 491, 496, 506, 508). While Dr. Chavez, Plaintiff's treating spine specialist, found no tenderness, palpitation, or muscle spasms in the cervical area, he did conclude that Plaintiff's range of motion was "very limited"—Plaintiff's flexion was restricted, extension was limited to 30–35°, and rotation was limited to 10–15°. (*Id.* at 545). An MRI indicated reversal of normal lordotic curvature of the cervical spine, which may be due to myospasm, early cervical spondylosis, and a disc bulge that effaces the thecal sac. (*Id.* at 560). Other doctors diagnosed neck impairments consistent with reduced mobility. (*Id.* at 486 (diagnosing cervical strain and prescribing Norco), 496–97 (diagnosing

cervical strain), 546 (diagnosing severe chronic cervical strain, possible cervical radiculopathy, and generalized cervical stiffness, and prescribing muscle relaxants and Norco)). And Plaintiff consistently complained about his neck pain and lack of mobility. (*Id.* at 484 (neck pain, described as 7/10), 399–402 (severe neck pain, characterized as 10/10), 292 (cannot turn neck left to right or front to back), 494 (gradually increasing pain, described as 8–9/10, aggravated by neck movement), 342 (cannot turn or bend his head), 503 (constant pain and stiffness in his neck), 544 (neck pain not alleviated with Robaxin or tramadol), 545 (marked limitations in the range of motion in his neck), 75–92 (testifying to neck pain radiating to his fingertips, which limits neck movement)).

Nevertheless, the ALJ's RFC contains no limitations related to Plaintiff's neck mobility. Indeed, the ALJ's analysis contains no explanation as to why any neck-related restrictions were not included in the RFC. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) ("An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion."). "If the ALJ concluded that the evidence of [Plaintiff's] limited ability to move his neck was not credible, then the ALJ should have explained his analysis of the medical evidence regarding this issue." *Perrine v. Astrue*, No. 11-CV-3045, 2012 WL 264301, at *8 (C.D. Ill. Jan. 30, 2012). The ALJ must "articulate reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). If the ALJ found that Plaintiff had no limitation in the movement of his neck, he should have addressed the medical evidence related to this issue. Because of this

error, the decision must be reversed and remanded for further proceedings. *Perrine*, 2012 WL 264301, at *8 (reversing decision where ALJ failed to address claimant's neck restrictions in the RFC despite claimant's treating physician and the Agency doctor finding that claimant had limited range of motion in his neck); *Kessler v. Colvin*, No. 14 CV 0152, 2015 WL 4133068, at *5 (N.D. Ind. July 7, 2015) (because the ALJ did not discuss the evidence of neck and cervical spine limitations, "the Court cannot provide a meaningful review of whether his analysis formed the requisite evidentiary bridge to his conclusion").

The Commissioner argues that the ALJ "properly relied on medical expert testimony when assessing [Plaintiff's] RFC." (Dkt. 17 at 4). But the ME did not discuss the functional impact of Plaintiff's limited neck range of motion. In any event, the ALJ cannot reject evidence from treating and examining physicians merely on the basis of a nonexamining doctor's opinion. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). At a minimum, the ALJ was required to address the inconsistencies between the ME's opinion and the findings of the Agency's examining doctors, as well as those of the treating specialist. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (ALJ failed to provide a valid explanation for preferring a nonexamining doctor's analysis over the Agency's examining doctor).

The Commissioner also asserts that the ALJ did note "that treatment records did not support [Plaintiff's] alleged additional limited ability to move his head." (Dkt. 17 at 4) (citing R. at 26–28). But the pages cited by Defendant merely contain the ALJ's summary of some of the medical evidence; it does not contain any assessment of the functional impact of Plaintiff's limited neck movement or a discussion of the conflicting medical evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (ALJ's failure to discuss claimant's limited ability to bend on account of his bad back constituted error). For example, the Commissioner cites the ALJ's summary of Plaintiff's February 2011 hospital visit where "treatment records did not support significant feelings or neurological deficits, other than tenderness to the neck and chest." (Dkt. 17 at 5) (citing R. at 27, 378–80). The Court, however, must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). And here, the ALJ did not determine that an absence of neurological deficits was inconsistent with a limited range of motion. Indeed, the Commissioner does not cite any medical evidence that would support such a finding. *Cf. Thomas*, 745 F.3d at 806 ("While she noted that Thomas's gait and neurological exams were normal, she ignored evidence that Thomas had difficulty getting on and off the examining table and had limited ranges of motion in her hips and knees."); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("We have recognized that an ALJ cannot play the role of doctor and interpret medical evi-

dence when he or she is not qualified to do so."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Finally, the Commissioner contends that the ALJ's adverse credibility finding supports the ALJ's determination that Plaintiff's range of motion in his neck does not yield any greater RFC restrictions. (Dkt. 17 at 6) ("The ALJ noted the medical record showed very limited ongoing treatment, and clinical findings did not support [Plaintiff's] asserted limitations."). But the Commissioner cites no legal authority for the premise that medical findings and opinions are subject to a credibility determination. In any event, the ALJ did not reject Plaintiff's statements in their entirety; instead, he found Plaintiff "not entirely credible." (R. at 29). And the ALJ's credibility discussion did not include an assessment of whether his statements were consistent with the range-of-motion findings by his treating specialist and the Agency's examiners. (*Id.* at 29–30). This vague credibility finding does not excuse the ALJ from completing a thorough RFC analysis. SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."); *see Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (the ALJ's credibility determination by itself does not "build the requisite 'logical bridge' between the evidence and the ALJ's [RFC] conclusions"; instead "the ALJ's RFC assessment needed to address why Thomas's reported limitations were

or were not consistent with the evidence in the record"); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) ("The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony.") (emphasis in original).[7]

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ, based on the medical evidence, shall determine the functional impact of Plaintiff's limited neck motion and include such information in Plaintiff's RFC and the hypotheticals posed to the VE.

---

[7] Plaintiff also contends that the ALJ failed to assess the exacerbating functional impact of his obesity in combination with his other impairments. (Dkt. 13 at 11–13). But despite Plaintiff's height and weight, the evidence contains *no* observations by *any* medical source that Plaintiff is obese. To the contrary, Plaintiff's chiropractor described his body type as "mesomorph," even though there was an option on the form to describe him as "obese." (R. at 529); *see Concise Oxford English Dictionary* 896 (12th ed. 2011) (defining "mesomorph" as "a person with a compact and muscular body"). And even if he is obese, Plaintiff fails to demonstrate how his obesity combined with his other impairments impacts his ability to work. *Hisle v. Astrue*, 258 F. App'x 33, 37 (7th Cir. 2007) (claimant bears the burden to "articulate how her obesity limits her functioning and exacerbates her impairments"); *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (claimant must "specify how his obesity further impaired his ability to work") (citation omitted); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Skarbek does not explain how his obesity would have affected the ALJ's five-step analysis.").

Plaintiff also asserts that the ALJ's RFC assessment failed to address his sitting limitations, lower back pain, and difficulties handling objects. (Dkt. 13 at 13–15). To the contrary, the ME explicitly considered this evidence in quantifying Plaintiff's functional limitations. (R. at 103–08, 116–24). The ALJ gave "considerable weight" to the ME's opinion, a determination that Plaintiff does not dispute.

**B. Summary**

Because the Court is remanding to reevaluate Plaintiff's RFC, the Court chooses not to address Plaintiff's argument that the ALJ's credibility determination is not supported by substantial evidence. (Dkt. 13 at 9–11). On remand, the ALJ shall reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request for reversal is **GRANTED**, and Defendant's Motion for Summary Judgment [16] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 5, 2016

_____
MARY M. ROWLAND
United States Magistrate Judge